The case will be remanded for further proceedings consistent with this opinion.

Peter J. BRENNAN, Secretary of Labor, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond Hendrix, d/b/a Alsea Lumber Company, Respondent.

No. 73–1938.

United States Court of Appeals, Ninth Circuit.

Feb. 24, 1975.

Robert S. Greenspan, Civil Div., Appellate Section, U. S. Dept. of Justice (argued), Washington, D. C., for petitioner.

Harry S. Chandler (argued), Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for respondent.

Before KOELSCH and CHOY, Circuit Judges, and MARKEY,* United States Court of Customs and Patent Appeals.

## OPINION

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals:

The Secretary of Labor petitions for review of that portion of a final order of the Occupational Safety and Health Review Commission [Commission] which vacated certain alleged violations of the Occupational Safety and Health Act of 1970 [Act], 29 U.S.C. § 651 et seq. We find the Commission's order supported by substantial evidence on the record, considered as a whole, and affirm.

### The Facts

Respondent Hendrix's Alsea Lumber Company [Alsea] maintains a small sawmill and logging yard, employing some 30 employees in the production and sale of lumber. The genesis of this action was a safety and health inspection of Alsea conducted by a compliance officer [inspector] of the U. S. Department of Labor.

The inspector, approaching the mill at approximately 35 miles per hour in his pick-up, observed Alsea's log pondman at a waterside work station about 500 feet from the roadway. The pondman did not at that time appear to the inspector to be wearing a buoyant life jacket. The inspector proceeded to the mill, presented his credentials, and conducted an inspection tour as provided for in 29 U.S.C. § 657. When the inspection tour reached the waterside station, the pondman was wearing a life jacket.

After the inspection tour, Alsea was cited for three serious and seventeen non-serious violations of the Act, of which the following are pertinent here:

(a) *"Serious Violation No. 2"*—29 CFR 1910.212(a)(3)(ii)—Location of the work station of a buck saw operator exposing him to the saw while it is in operation; Penalty—$750.00

(b) *"Serious Violation No. 3"*—29 CFR 1910.265(d)(2)(iii)(g)—Failure of a log pond worker to wear a buoyant life preserver while at his work station on the pond; Penalty—$750.00

(c) *"Non-Serious Violation No. 5"*—29 CFR 1910.133(a)(1)—Failure of worker to wear eye goggles while subjected to flying sawdust and splinters from the saws. Penalty—$35.00

The record establishes that the appealed violations resulted from individual employee choices of conduct—equipment operation and failure to wear protective equipment—which were contrary to the employer's instructions. Serious Violation No. 2 rests on an employee's operation of the buck saw as it is raised and lowered, whereas the employer's instructions restricted saw operation to just prior to, during and just after contact with the log, at which time the work station of the operator is several feet to the rear and to the side of the saw. Serious Vio-

---

'* Sitting by designation pursuant to 28 U.S.C. § 293(a).

lation No. 3 and Non-Serious Violation No. 5 rest on the election of the involved employees, respectively, not to wear a life preserver and goggles at the time of observation by the inspector. The life preserver and goggles had been provided by the employer with instructions that they be worn. They were donned by the involved employees before the inspector left the premises.

There is no evidence in the record tending to show that the employer had any knowledge respecting these instances of employee disobedience of its established instructions. No effort was made to establish that the instructions were a mere sham or that the employer had any on-going practice of permitting its instructions to be disregarded by its employees with impunity. The Secretary alleged employer knowledge and Alsea denied it. As the case reaches us, the absence of employer knowledge must be considered one of the established facts.

### Commission's Order

The alleged violations were all vacated for lack of evidence that the employer knew or had reason to know of their existence. The Commission's position was that the burden of proof on all elements of a violation lay upon the Secretary and that employer knowledge is a necessary element of both serious and non-serious violations.

"Serious Violation No. 3" was vacated on the additional ground of its having been observed prior to presentation of the inspector's credentials.

### Scope of Review

The Act authorizes the Secretary of Labor to set safety standards, to conduct inspections, and to issue citations and proposed penalties. It establishes the Commission as an independent agency to carry out adjudicatory functions and authorizes the Commission, inter-alia, to vacate citations and proposed penalties. The findings and conclusions of the Commission are subject to our review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 706 and 29 U.S.C. § 660(a). Because there is no factual issue before us, the Commission's order must be affirmed if it be found to have been in accordance with law.

### The Issues

The Secretary challenges the order on legal grounds, urging that the Commission erred in (1) assigning to him the burden of proof with respect to employer knowledge; (2) requiring employer knowledge as an element of the non-serious violation; and (3) vacating one of the serious violations as unauthorized because it was observed prior to presentation of the inspector's credentials.

Finding no error in the Commission's order vacating all of the violations for lack of proof by the Secretary of employer knowledge, we do not reach the issue of whether observation of a violation prior to presentation of credentials is a proper basis for a citation.

### OPINION

Although the Secretary's brief quotes and is for the most part couched in language relating to the general duty clause of the statute, 29 U.S.C. § 654(a)(1), the complaint and citations themselves charge failure to comply with specific safety and health standards, i. e., violations of the special duty clause, 29 U.S.C. § 654(a)(2).[1] The freedom and flexibility permissible in the preparation, amendment, and proof under administrative pleadings was recognized in National Realty & Construction Co. v. Occupa-

---

1. 29 U.S.C. § 654. Duties of employers and employees

(a) Each employer—
   (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
   (2) shall comply with occupational safety and health standards promulgated under this chapter.

tional Safety and Health Review Commission, 160 U.S.App.D.C. 133, 489 F.2d 1257 (1973). In that case, however, the court pointed out the unfairness of permitting reliance on new theories and considerations put forward at post-hearing stages. As required by the Act, the citations herein describe the alleged violations "with particularity." 29 U.S.C. § 658. The case was heard and reviewed below on charges limited to the special duty clause and will be so reviewed here.[2]

### Burden of Proof

The Act defines a serious violation in 29 U.S.C. § 666(j) as:

> For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.* [Emphasis added.]

That employer knowledge is an element of a serious violation is not disputed. The Secretary insists that he need not prove the existence of that element and that the respondent must prove its absence.

■ The Secretary argues that Congress' deletion of the words "the Secretary determines that" after the word "unless"[3] indicates a Congressional intent to place the burden of proving lack of knowledge upon the employer. We disagree. The clear import of the deletion of the quoted phrase was to remove the element of employer knowledge from those elements unilaterally determinable by the Secretary and to raise that element to one of affirmative proof necessary to sustain a charge of violation of the Act and the imposition of penalties therefor, when the charge is contested before the Commission.

The Commission has consistently so interpreted the quoted provision of the Act and we have been presented no compelling reason for finding that interpretation to be contrary to law. The Commission's rule 73(a) provides:

> In all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Secretary. 29 C.F.R. § 2200.73(a).

■ In the present case the Secretary, fully aware of rule 73(a), affirmatively alleged knowledge on the part of the employer. We find no error in the Commission's requirement that the Secretary prove the allegations he elects to

2. The Act has been described as "novel in approach and sweeping in coverage," *National Realty, supra,* and as "revolutionary," White & Carney, OSHA Comes of Age: The Law of Workplace Environment, 28 Bus. Law 1309 (1973). Judicial review on the merits of enforcement contests appears thus far to have been limited to five cases, the majority involving investigations and inspections following fatal accidents and resulting in citations for violations of the general duty clause, Brennan v. Occupational Safety and Health Review Commission and Republic Creosoting Co., 501 F.2d 1196 (7th Cir. 1974); American Smelting and Refining Co. v. Occupational Safety and Health Review Commission, 501 F.2d 504 (8th Cir. 1974); REA Express, Inc. v. Brennan, 495 F.2d 822 (2nd Cir. 1974); Brennan v. Occupational Safety and Health Review Commission and Vy Lactos Laboratories, Inc., 494 F.2d 460 (8th Cir. 1973); National Realty, supra; and three cases involving citations for violations of the special duty clause, Brennan v. Occupational Safety and Health Review Commission and Gerosa, Inc., 491 F.2d 1340 (2nd Cir. 1974); Brennan v. Occupational Safety and Health Review Commission and J. W. Bounds, 488 F.2d 337 (5th Cir. 1973). Texports Stevedore Co., Inc. v. Secretary of Labor, 484 F.2d 465 (5th Cir. 1973); *Texports* involved injury and *Gerosa* involved death. The present case appears to involve the first effort of the Secretary to seek judicial enforcement of a charge against an employer for violations of the special duty clause on the sole basis of employee misconduct.

3. Legislative History of OSHA, Subcommittee on Labor of the Senate, Committee on Labor and Public Welfare, 92nd Cong., 1st Sess. at 1104, 1131 (1971).

make before the Commission. Having alleged knowledge on Alsea's part and having thereby accepted the burden of proving it, the Secretary now seeks to shift that burden to Alsea.[4] In our view, the Secretary has at least the initial burden of establishing a *prima facie* case of employer knowledge before the burden of going forward shifts to the employer.[5]

The Secretary argues that he need only prove the serious "violation." The argument is based on a distinction without a difference. The statute states that *unless* the employer has knowledge, no serious violation may exist. Therefore, to prove the very existence of a serious violation, the Secretary must prove that the employer had knowledge of the condition alleged to be a violation.[6]

We hold therefore that the Commission's procedural requirement, placing upon the Secretary the burden of proving all elements of a violation, one element of which is employer knowledge thereof, is a proper exercise of the Commission's authority under the Act.

What we have said respecting the burden of proof of employer knowledge is equally applicable to both serious and non-serious violations if employer knowledge be equally an element of both.

### Employer Knowledge Is an Element of a Non-Serious Violation

The statute refers to the nature of violations only at 29 U.S.C. § 666, the title of which is "Civil and criminal penalties." [7] Section (a) thereof states that an employer who "willfully or repeatedly violates * * * may be assessed * * not more than $10,000 * * *." Section (b) provides that an employer who has "received a citation for a serious violation * * * shall be assessed * * up to $1,000." Section (c) provides that an employer who has "received a citation for a violation * * * specifically determined not to be of a serious nature, may be assessed * * * up to $1,000 * * *." Section (j) defines a serious violation as quoted *supra.*

Section (d) provides a penalty for failure to correct "a violation." Section (e) sets forth a fine and imprisonment for an employer who "willfully violates" and "that violation caused death." Section (f) relates to fine and imprisonment of any person who gives advance notice of

---

4. Alsea argues that the Secretary's failure to raise the burden issue before either the Administrative Law Judge or the Commission forecloses his raising it before this court on review, citing 29 U.S.C.A. § 660(a). Because the Commission's procedural rule is based on its interpretation of the statute, the Secretary raises a legal question fundamental in this and future cases and one properly before us under 5 U.S.C. § 706.

5. It should be noted that we deal here only with the special duty clause and violations resulting from an employee's election to disobey his employer's instructions. Proof of an employer's *failure to provide* guardrails, safety equipment, instructions, or the like, would establish a *prima facie* case of an employer's knowledge of its own acts of omission. Similarly, a failure to comply with the general duty clause may not require "knowing consent." *National Realty, supra.*

6. In effect the Secretary argues that only the *unsafe condition* must be proved. To so hold would frustrate the intent of Congress in amending the original House bill to insert the element of employer knowledge. See BNA, Job Safety Act, 145.

7. § 666. Civil and criminal penalties

(a) Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

(b) Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $1,000 for each such violation.

(c) Any employer who has received a citation for a violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of regulations prescribed pursuant to this chapter, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $1,000 for each such violation.

* * * * * *

an inspection. Section (g) provides for fine and imprisonment of whoever "knowingly makes any false statement." Section (h) establishes a penalty for an employer who violates any posting requirement. Section (i) authorizes the Commission to assess all penalties. Section (k) directs payment of penalties to the Secretary for deposit into the Treasury and provides for their recovery in the courts.

Thus the statute describes no element of a non-serious violation and provides no guidelines for specifically determining a violation "not to be of a serious nature." We find unpersuasive, therefore, the argument of the Secretary to the effect that the presence of an employer knowledge requirement in Section (j) and its absence from Section (c) impels a finding of Congressional intent to delete employer knowledge as an element of a non-serious violation. We find no more warrant for deleting employer knowledge than we do for the deletion of any of the other elements set forth in Section (j) (probability of harm; conditions existing; practices adopted or in use; occurrence in place of employment), all of which are equally absent from Section (c).

Considering, as we must, the statute as a whole and 29 U.S.C. § 666 in its entirety, we are convinced that Congress intended the same meaning for the word "violation" wherever it appears. Section (c), containing the only reference to non-serious violations, must be read in conjunction with Section (b). Both relate to employers who have merely "received a citation."[8] Neither defines a violation. The sole difference between sections (b) and (c) lies in the mandatory assessment of penalty for serious violations and the permissive assessment for non-serious violations.

We note also, the use of "wilfully" and "knowingly" in those sections of 29 U.S.C. § 666 which refer to persons who "violate." Wilfulness, with which knowledge is necessarily equated, does not appear where the prohibited act is impossible without knowledge of the actor (failure to correct; giving advance notice; failure to post), or in Sections (b) and (c) which are concerned only with assessment upon citation. Whether the assessment be mandatory or permissive is made to turn solely on the nature of the violation, not on the presence or absence of employer knowledge.

■ We find the Commission's requirement of proof by the Secretary of employer knowledge as an element of a non-serious violation to be both reasonable and in accord with the statute under which the Commission functions. The whole tone of the statute and its legislative history is directed toward increased safety of working conditions through the *cooperative* efforts of employers and employees. The legislative purpose, stated in 29 U.S.C. § 651(b), includes:

(2) by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions.[9]

The Secretary's citations herein are directed to Alsea and include the statement, "On the basis of the inspection it is alleged that *you* violated the Occupational Safety and Health Act of 1970 * * * (emphasis ours). It appears unquestionable that the employees involved herein violated the act.

The legislative history of the Act indicates an intent not to relieve the employer of the general responsibility of assuring compliance by his employees.[10] Nothing in the Act, however, makes an employer an insurer or guarantor of em-

8. As the citation form spells out, the issuance of a citation does not of itself constitute a finding that a violation of the Act has occurred. See, also, 29 U.S.C. § 659.

9. Although the statute, 29 U.S.C. § 654, requires both employers and employees to comply with safety standards, Congress provided penalties only for employer violations. 29

U.S.C. §§ 658, 666. No penalties were provided for employee disregard of their responsibilities under the Safety Act.

10. S.Rep.No.91–1282, 91st Cong. 2nd Sess. 10–11 (Oct. 6, 1970), U.S.Code Cong. & Admin.News, 1970, p. 5187.

ployee compliance therewith at all times. The employer's duty, even that under the general duty clause, must be one which is achievable. See *National Realty, supra*. We fail to see wherein charging an employer with a non-serious violation because of an individual, single act of an employee, of which the employer had no knowledge and which was contrary to the employer's instructions, contributes to achievement of the cooperation sought by the Congress. Fundamental fairness would require that one charged with and penalized for violation be shown to have caused, or at least to have knowingly acquiesced in, that violation. Under our legal system, to date at least, no man is held accountable, or subject to fine, for the totally independent act of another. A conspiracy to violate the Act is neither alleged nor reflected in the record before us.

The Commission's insistence on some nexus between the employer and the alleged violation confirms the wisdom of the Congress in establishing the Commission.[11] Not requiring the Secretary to establish that an employer knew or should have known of the existence of an employee violation would in effect make the employer strictly and absolutely liable for *all* violations[12] and would render meaningless the statutory requirement for employee compliance, 29 U.S.C. § 654(b).

To revive the citation for non-serious violation No. 5 herein would be to subject an employer to a standard of strict liability, under the special duty clause, for deliberate employee misconduct. We do not find that result to be within the intent of the Congress.

## CONCLUSION

The final order of the Commission was in accordance with law and must be affirmed.

11. The working out of specific responsibilities and relationships between the Secretary and the Commission under this relatively new Act has involved an "administrative whirlwind," Brennan v. Occupational Safety and Health Review Commission and Brent Towing Co., Inc., 481 F.2d 619 (5th Cir. 1973), an effort of the Secretary to limit the power of the Commission to modify penalties proposed by him, Brennan v. Occupational Safety and Health Review Commission and Interstate Glass Co., 487 F.2d 438 (8th Cir. 1973), and the refusal by the court of an invitation to resolve the conflict between the Secretary and the Commission as to their respective rights, powers, duties and responsibilities, *Bounds, supra*, note 2. See also, Brennan v. Occupational Safety and Health Review Commission and Echols Trucking Co., 487 F.2d 230 (5th Cir. 1973). Secretarial and Commission zeal in behalf of worker safety is neither unexpected nor decried. If, particularly in this early period of the Act's existence, there should be error in the direction of "adventurous enforcement," as in *National Realty, supra*, the courts stand ready to ameliorate its effect. Moreover, the Act itself, 29 U.S.C. § 675, requires annual reports to the Congress containing, *inter alia*, recommendations for legislation necessary to improve its administration.

12. In *National Realty, supra*, the court dealt with a fatal accident and an alleged violation of the general duty clause. Because that clause requires the employer to *furnish* employment free of recognized hazards, the court did not consider "knowing consent" to be a necessary element of a violation thereof. Nonetheless, the court said (489 F.2d at 1266):

> * * * A hazard consisting of conduct by employees, such as equipment riding, cannot, however, be totally eliminated. A demented, suicidal, or willfully reckless employee may on occasion circumvent the best conceived and most vigorously enforced safety regime * * * Congress intended to require elimination only of preventable hazards * * *.