**DANCO CONSTRUCTION COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents.**

**No. 77–1913.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1978.

Decided Nov. 8, 1978.

W. Russell Meeks, Barber, McCaskill, Amsler, Jones & Hale, Little Rock, Ark., for petitioner.

Eric W. Cloud (on brief), Atty., U. S. Dept. of Labor, Washington, D. C., argued, for respondent; Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for OSHRC, Washington, D. C., on brief.

Before ROSS, Circuit Judge, MARKEY, Chief Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

Danco Construction Company appeals the decision of the Occupational Safety & Health Review Commission fining it $600.00 for committing a serious violation of section 5(a)(2)[1] of the Occupational Safety and Health Act (OSHA) and 29 C.F.R. 1926.-550(a)(15).[2] We affirm.

I

Danco is in the business of laying underground utilities. The alleged OSHA violation in this case stems from an accident which occurred while its employees were unloading steel pipe from a flat-bed truck and stacking it on "skids" in preparation for the next day's pipe-laying operation. The boom of the crane which was unloading the pipe came into contact[3] with overhead elec-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. 29 U.S.C. § 654(a)(2), section 5(a)(2) of the Act, requires that "[e]ach employer shall comply with occupational safety and health standards promulgated under [the Act]." A violation of this section is "serious" when "there is a possibility of an accident and a substantial probability that death or serious physical injury would result." *Brennan v. O.S.H.R.C.*, 487 F.2d 438, 439 (8th Cir. 1973), *citing* 29 U.S.C. § 666(j).

2. This regulation governs the operation of cranes and derricks when used in the proximity of high-voltage power lines. It provides in pertinent part:

Except where electrical distribution and transmission lines have been de-energized and visibly grounded at point of work or where insulating barriers, not a part of or an attachment to the equipment or machinery, have been erected to prevent physical contact with the lines, equipment or machines shall be operated proximate to power lines only in accordance with the following:

(i) For lines rated 50kV, or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet.

3. It was not established whether the crane boom actually touched the electric lines or merely came sufficiently close to allow the electricity to arc from the lines to the boom. In any event, there is substantial evidence in the record to support the Commission's finding that the boom came within at least ten feet of

tric lines, causing the death of one Danco employee and serious injury to another; the two men were holding the ends of a section of pipe which was attached to the crane boom by steel hooks and cables.

An OSHA Compliance Officer investigated the accident scene and made the following factual findings which form the bases for the Commission's decision. The accident occurred in North Little Rock, Arkansas at approximately 10:00 a. m. on a bright, sunny morning. Danco's crew foreman positioned the crane on the shoulder of a public road and to the rear of the pipe truck. He instructed the crew on where to stack the pipe and then left the area. The crane operator began unloading the truck and stacking the pipe on the side of the road. When stacking pipe the crane operator faced the sun. One worker attached the crane's cable to the pipe; the crane lifted the pipe and swung it over the skids; and two other workers positioned the pipe on the skids and released the cable. The electric lines in question crossed directly over the area where the pipes were being stacked, with their height ranging from twenty to thirty feet above the ground. The higher lines carried 13,200 volts of electricity.

The operator admitted difficulty in monitoring the crane's movements. Bright sunlight was shining directly in his face and a large bush blocked his view of one of the workers who was stacking and releasing the pipe. These conditions may have accounted for the extended ten to fifteen second contact the boom made with the electric lines, since the operator was apparently unaware of this contact until he heard one of the men yelling and saw the glove on the deceased worker's hand burning.

Further investigation led the Compliance Officer to conclude that Danco had a history of laxity in its training and supervisory practices. The company was often engaged in unloading steel pipe near electric lines,

yet Danco's supervisors did not hold regular safety or training meetings with their crews. Instead, oral safety instructions were given on an ad hoc basis whenever supervisors determined such warnings were necessary to correct unsafe practices. This particular crew had received instruction on the basic operation of the crane and had been warned, in general, to stay away from electric lines; but none of the crew members was ever instructed to maintain the OSHA-required ten foot clearance between the crane and electric lines, nor did the crane's cab contain an OSHA-approved warning placard stating this requirement. Unfortunately, the cab did contain an outdated and dangerously inadequate placard mandating only a six-foot minimum clearance.[4] Finally, Danco routinely, as here, permitted its crew to work without direct supervision. This fact is of particular significance in this case since both of the employees involved in stacking the pipe were young and inexperienced, and one of them had been warned about his dangerous behavior only a few days prior to the accident.

As a result of this investigation, the Secretary of Labor issued a citation against Danco alleging a serious violation of the Act because the crane boom was brought within ten feet of energized electric lines, thus causing the serious injury and death of Danco employees. He proposed a $650.00 penalty. Danco filed a timely notice of contest, and the Secretary responded by filing a formal complaint with the Commission. A hearing was held before an administrative law judge who affirmed the Secretary's complaint but reduced the penalty to $600.00. The Commission later granted Danco's petition for discretionary review of the law judge's decision and affirmed it in October of 1977. A timely appeal was then filed with this court pursuant to 29 U.S.C. § 660(a).

## II.

■ In reviewing the Commission's decision, we are mindful of the broad scope and

---

the lines in violation of 29 C.F.R. 1926.-550(a)(15)(i).

4. This placard was in compliance with pre-OSHA Arkansas law. An OSHA-approved placard was placed in the cab after the accident.

remedial purposes of OSHA. *Atlas Roofing Co. v. O.S.H.R.C.,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); *Brennan v. O.S.H.R.C., supra,* 487 F.2d at 439. Also, we are bound to apply the substantial evidence test to the Commission's findings of fact and reasonable inferences drawn therefrom. *Arkansas Best Freight System, Inc. v. O.S.H.R.C,* 529 F.2d 649, 654 (8th Cir. 1976); *Brennan v. O.S.H.R.C, supra,* 487 F.2d at 442.

There is substantial evidence in the record supporting the Commission's finding that the crane boom came within ten feet of electric lines in violation of 29 C.F.R. 1926.550(a)(15)(i) and that this violation was a serious one insofar as it could have, and did, result in the serious injury and death of Danco employees. In the administrative proceedings, Danco's defense to these findings was that it should not be held responsible for the accident because (1) it could not have been aware of any OSHA violation and (2) the accident was the result of the unforeseeable carelessness of its employees. These contentions were rejected by both the administrative law judge and the Commission based upon their determination that Danco could have prevented this accident by adequately training and supervising its work crews. Consequently, the Secretary's citation against Danco was affirmed since the company had permitted its crane to contact electric lines without either de-energizing and visibly grounding them or having insulated barriers erected to prevent the conduction of electricity. 29 C.F.R. 1926.550(a)(15).

On appeal, Danco contends that the Commission's finding of a serious violation of the Act is not supported by substantial evidence. In particular, it argues that the Secretary failed to negative a statutory defense contained in the Act's definition of "serious violation" which relieves employers from liability if they "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(j).[5] Or, more simply, Danco would require the Secretary to prove by direct evidence that it knew or should have known of the alleged serious violation at the time of the accident. In this respect, it cites us to *Brennan v. O.S.H.R.C.,* 511 F.2d 1139, 1145 (9th Cir. 1975). There the Ninth Circuit stated:

> We fail to see wherein charging an employer with a . . . violation because of an individual, single act of an employee, of which the employer had no knowledge and which was contrary to the employer's instructions, contributes to achievement of the cooperation sought by the Congress.

This court has previously rejected Danco's argument, and its citation to the *Brennan* decision, in situations where the Commission's finding of a serious violation is based in part upon substantial evidence that the employer failed to adequately train and supervise its employees. In *Ames Crane & Rental Service, Inc. v. Dunlop,* 532 F.2d 123 (8th Cir. 1976), a case involving a violation of the same OSHA regulation now before us, we affirmed the Commission's finding of a serious violation over the dissent of one commissioner who argued that the employer lacked "actual or constructive knowledge of the alleged violation." Our language in *Ames* is equally applicable to the case at bar.

> [W]e need not decide whether [the employer] could be charged with a serious violation if its operator had disregarded clear and adequate safety instructions, because no such instructions were given here. [The employer] never instructed its crane operators to maintain any specified distance from live power lines . . . Such conduct does not fulfill the duty of

---

**5.** This section, in its entirety, provides:

> For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.* (Emphasis added.)

an employer to take adequate precautionary steps to instruct and train employees to protect against reasonably foreseeable dangers.

*Ames Crane & Rental Service, Inc. v. Dunlop, supra,* 532 F.2d at 125, *citing Brennan v. Butler Lime & Cement Co.,* 520 F.2d 1011, 1017 18 (7th Cir. 1975). Thus, Danco cannot fail to properly train and supervise its employees and then hide behind its lack of knowledge concerning their dangerous working practices.[6]

As the Seventh Circuit has noted:

[I]f an employee is negligent or creates a violation of a safety standard, that does not necessarily prevent the employer from being held responsible for the violation. True, an employer is not an insurer under the Act. But an employer is responsible if it knew or, with the exercise of reasonable diligence, should have known of the existence of a serious violation. A particular instance of hazardous employee conduct may be considered preventable even if no employer could have detected the conduct, or its hazardous nature, at the moment of its occurrence, . . . [where] such conduct *might have been precluded through feasible precautions concerning the hiring, training, and sanctioning of employees.* (Emphasis in original.)

*Brennan v. Butler Lime & Cement Co., supra,* 520 F.2d at 1017, *citing R.E.A. Express, Inc. v. Brennan,* 495 F.2d 822, 885 (2d Cir. 1974); *National Realty & Constr. Co. v. O.S.H.R.C.,* 160 U.S.App.D.C. 133, 489 F.2d 1257, 1260 n. 6, 1266 n. 36 (1973).

Our review of the record in this case reveals that it contains substantial evidence supporting the Commission's findings that a serious violation occurred and that Danco could have prevented its occurrence. The company left unsupervised a young, inexperienced and largely untrained crew working in close proximity to a dangerous power source. No crew member was instructed to maintain a ten foot clearance between the crane and the nearby electric lines. The crane, itself, was positioned in a manner which prevented the operator from adequately monitoring its movements. And the cab of the crane contained a dangerously inaccurate warning placard which implied that the crane could be safely operated within six feet of high voltage lines. These deficiencies could have been corrected by proper training and supervisory practices. Thus, the decision of the Commission must be upheld.

Affirmed.

---

**6.** Danco further contends that the Commission incorrectly placed the burden of proof on it to establish "by preponderating evidence that it had adequate training and supervision." Where, as in this case, the record contains substantial evidence of the employer's failure to adequately train and supervise its employees, we do not find error in the Commission's determination that the employer must come forward with evidence to rebut this prima facie showing. After all, Danco is in the best position to demonstrate the sufficiency of its safety programs. And "where the Commission has given the regulation an interpretation well within the plain meaning of its terms, we cannot say that the Commission's reading is unreasonable." *Brennan v. O.S.H.R.C. & Fiegen,* 513 F.2d 713, 716 (8th Cir. 1975).