**ELECTRIC SMITH, INC., Petitioner,**

v.

**SECRETARY OF LABOR, Respondent.**

No. 80–7228.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1981.

Decided Feb. 4, 1982.

Clair Cordon, Winston & Cashatt, Spokane, Wash., for petitioner.

Allen H. Feldman, Washington, D. C., for respondent.

* Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation.

Before SKOPIL and POOLE, Circuit Judges, and KENYON *, District Judge.

KENYON, District Judge:

Petitioner Electric Smith, Inc., was cited for four violations of Occupational Safety and Health Act regulations on a multi-employer construction site. Its sole claim for petition is that the Occupational Safety and Health Review Commission (hereinafter the Commission or OSHRC) erred in refusing to relieve it of responsibility for the violations under the Commission decisions governing the duties of a "noncreating and noncontrolling" subcontractor which did not create or have control over hazardous conditions at a multi-employer construction site. According to what has become known as the *Anning-Johnson/Grossman* rule, the Commission requires a subcontractor in Petitioner's position to show that it has protected its own employees by "realistic measures taken as an alternative to literal compliance with the applicable standard," *i.e.* "those measures that would be taken by a reasonable employer seeking to protect his employees and faced with the same conditions." *Anning-Johnson Co.*, BNA 4 OSHC 1193, 1975–76 CCH OSHD ¶ 20690, at 24,784 n.16 (No. 4409, 1976); *Grossman Steel & Aluminum Corp.*, BNA 4 OSHC 1185, 1975–76 CCH OSHD ¶ 20691, at 24,791 (No. 12775, 1976). We reverse, concluding that the decision of the Administrative Law Judge (ALJ), adopted by the Commission, affirming the citations is arbitrary and capricious and not in accordance with law.

## I. FACTS

Following an October 11, 1978, inspection, the Secretary of Labor issued identical citations to the general contractor, Emerick Construction Co., and to all three subcontractors on the site, including petitioner Electric Smith. The inspector found the following violations of the regulations pro-

mulgated pursuant to § 5(a)(2) of OSHA, 29 U.S.C. § 654(a)(2): 1) on the north side of the "core area" (atrium) of the structure, a three-story state office building in Lewiston, Idaho, the open edge of the second floor was guarded by a manila rope and not a standard railing; 2) the open sides of the northwest and southeast perimeter stairways were without handrails; 3) the metal pan treads on the southeast stairway were not filled with concrete; and 4) the elevator shaft on the second floor was without an intermediate railing. As a result of (1) and (2), Smith and the other firms were cited for "serious" violations of the Act under 29 U.S.C. § 666(j);[1] as a result of (3) and (4), Smith was cited for two additional nonserious violations of the Act.[2]

All four firms filed Notices of Contest with the Commission, but Emerick paid its assessed penalty of $3840 and withdrew its notice prior to a consolidated hearing on the asserted violations before an Administrative Law Judge (ALJ) on March 20, 1979. The cases were severed for decision, and in a written opinion dated March 17, 1980, the ALJ affirmed the citations against petitioner Smith while reducing the proposed penalty from $770 to $200, citing its good faith and other factors. The Commission on April 16, 1980, denied Smith's petition for review, and the decision of the ALJ thus became the final order of the Commission by operation of law, 29 U.S.C. § 661(i). The case is before the court on Smith's timely petition for review dated April 30, 1980. The court has jurisdiction pursuant to 29 U.S.C. § 660.

Petitioner Smith does not challenge the ALJ's findings that the four conditions cited did exist and were in violation of OSHA regulations. Nor does Smith dispute that it had actual knowledge that these hazards existed more than one month prior to the inspection, and that its four employees at the site had some limited but statutorily sufficient exposure to the hazardous conditions. The Secretary does not dispute that Smith neither created the violative conditions, nor had "control" over their abatement in that it lacked the means, the expertise, and the authority to rectify the conditions in the manner contemplated by the

1. As defined in 29 U.S.C. § 666(j), a "serious" violation exists in a place of employment if "there is a substantial probability that death or serious physical harm could result from a condition which exists ... unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

2. The violated regulations are, respectively, 29 C.F.R. §§ 1926.500(d)(1), 1926.501(b), 1926.-501(f), and 1926.500(c)(1).
   29 C.F.R. 1926.500(d)(1) provides:
   (d) *Guarding of open-sided floors, platforms, and runways.*
   (1) Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(1)(i) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toeboard wherever, beneath the open sides, persons can pass, or there is moving machinery, or there is equipment with which falling materials could create a hazard.
   29 C.F.R. 1926.501(b) provides:
   (b) Stairway railings and guardrails shall meet the requirements of § 1926.501(e) and (f).
   29 C.F.R. 1926.501(f) provides:

(f) Permanent steel or other metal stairways, and landings with hollow pan-type treads that are to be filled with concrete or other materials, when used during construction, shall be filled to the level of the nosing with solid material. The requirement shall not apply during the period of actual construction of the stairways themselves.
29 C.F.R. 1926.500(c)(1) provides:
(c) *Guarding of wall openings.*
   (1) Wall openings, from which there is a drop of more than 4 feet, and the bottom of the opening is less than 3 feet above the working surface, shall be guarded as follows:
   (i) when the height and placement of the opening in relation to the working surface is such that either a standard or intermediate rail will effectively reduce the danger of falling, one or both shall be provided;
   (ii) The bottom of a wall opening, which is less than 4 inches above the working surface, regardless of width, shall be protected by a standard toeboard or an enclosing screen either of solid construction or as specified in paragraph (f)(7)(ii) of this section.

regulations. Smith's duties under its contract with Emerick were limited to the preparation and installation of wiring, fixtures, and electrical equipment throughout the building. By agreement with Smith and the other subcontractors at the site, Emerick assumed full responsibility for providing all barricades, stairs, lights and other safeguards for the safety and protection of all employees working at the site.

## II. THE ANNING–JOHNSON/GROSSMAN DEFENSE

■■ Both Petitioner and the Secretary cite the *Anning-Johnson/Grossman* rule, which requires of a noncreating and noncontrolling subcontractor at least a "reasonable" and "realistic" response as an alternative to literal compliance with applicable safety regulations. The Commission's interpretations of OSHA must be treated with deference, and may not be overturned if reasonable and consistent with the purposes of the Act. *National Steel & Shipbuilding Co. v. OSHRC*, 607 F.2d 311, 317 n.8 (9th Cir. 1979). The *Anning-Johnson/Grossman* analysis has been upheld by both circuit courts which have considered it, *see DeTrae Enterprises Inc. v. Secretary of Labor*, 645 F.2d 103 (2d Cir. 1980); *Bratton Corp. v. OSHRC*, 590 F.2d 273 (8th Cir. 1979), and we concur with its application here. Although disputed by petitioner, we also agree with the Commission and the ruling of the Eighth Circuit in *Bratton, supra*, that the *Anning-Johnson/Grossman* standard should be treated as an affirmative defense, with the burden of persuasion on the cited employer, since an employer's conduct in protection of its employees is a matter particularly within its knowledge. *Grossman Steel, supra* at 24,792.

The Commission has promulgated no regulations defining the duties of a noncreating and noncontrolling subcontractor, having left the scope of the defense for case-by-case determination. However, in one passage in *Grossman Steel, supra*, cited by both the petitioner and the Secretary and by the Eighth Circuit in *Bratton, supra*, the Commission provided detailed guidelines as to what it expects of a subcontractor in Smith's situation:

> Simply because a subcontractor cannot himself abate a violative condition does not mean it is powerless to protect its employees. It can for example, attempt to have the general contractor correct the condition, attempt to persuade the employer responsible for the condition to correct it, instruct its employees to avoid the area where the hazard exists if this alternative is practical, or in some instances provide an alternative means of protection against the hazard.

*Grossman Steel, supra* at 791.[3]

## III. STANDARD OF REVIEW

■ The findings and conclusions of the Commission are subject to our review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 706, and under 29 U.S.C. § 660(a). *Titanium Metals Corp. of America v. Usery*, 579 F.2d 536, 540 n.2 (9th Cir. 1979); *Brennan v. OSHRC (Hendrix's Alsea Lumber Co.)*, 511 F.2d 1139, 1141 (9th Cir. 1975). The latter section empowers this Court to affirm, modify, or set aside the order of the Commission, and makes conclusive upon the court "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole." Under 5 U.S.C. § 706(2)(A), the decision of the Commission may be set aside if "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

The Secretary urges that review of the ALJ's decision be governed entirely by the substantial evidence standard because issues of fact were involved. We disagree. Whether a subcontractor has undertaken reasonable and realistic alternatives to liter-

---

**3.** The Second Circuit in *DeTrae Enterprises, supra*, implicitly followed the *Grossman Steel* guidelines in affirming the Commission's findings against a noncreating and noncontrolling subcontractor because it "neither provided an alternative means of protection for its employees, warned its employees, nor prevented them from using the hazardous areas." 645 F.2d at 104.

al compliance with the Act is best described as a mixed question of fact and law. As can be seen from an analysis of the facts, see Part IV, *infra*, there are a few issues of fact in dispute, including, for example, the motive and intent of the foreman for Smith in refraining from complaining to Emerick's home office. Review of the ALJ's findings on these discrete factual questions is, of course, limited to whether they are supported by substantial evidence in the record. But the factual findings are of limited importance in this case as compared with the conclusions of law to be drawn from them. Smith concedes that it knew about the violations, there is no conflicting testimony as to what Smith did or did not do, nor has the ALJ or the Secretary raised any question about the credibility of any testimony. The key issue before the ALJ was whether to affix the labels "reasonable" and "realistic" to Smith's conduct. Under these circumstances, review under the § 706(2)(A) standard is proper. *RMI Co. v. Secretary of Labor*, 594 F.2d 566, 570 (6th Cir. 1979); *Brennan v. OSHRC, supra*, 511 F.2d at 1141.[4]

While we are well aware that the Court may not substitute its judgment for that of the ALJ or the Commission,[5] we find the decision of the ALJ to be arbitrary and capricious in that the facts cited by the ALJ and record before him clearly show that Petitioner's actions were sufficient to establish an *Anning-Johnson/Grossman* defense.[6] We also find that the decision of the ALJ is not in accordance with law because it is inconsistent with the guidelines set forth by the Commission in the *Grossman Steel* decision and with the underlying policies of the Act as set forth in relevant decisions of the courts of appeal discussed in Part V, *infra. See Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 567–68 (5th Cir. 1976).

## IV. ANALYSIS OF THE FACTS

Petitioner Smith contends that the record shows that it did precisely what is contemplated by the guidelines set forth in the passage from *Grossman Steel* quoted above. We agree.

Beginning September 5, 1978, and continuing throughout the month, Smith and other subcontractors made "repeated" complaints to Jim McKuen, the on-site superintendent for the general contractor with respect to removal of the hazards. McKuen promised to make the corrections on several occasions and made a few minor changes, but had not accomplished much prior to the October 11 inspection. The ALJ concluded that Smith's persistent efforts to induce McKuen to act were not "realistic" or "appropriate" because "it quickly became apparent that the superintendent would do nothing" and Smith nevertheless "did not

---

4. Two circuits have applied the § 706(2)(A) standard to "adjudicatory conclusions," which appear to be determinations that are neither purely factual or legal. *See, e.g., Atlantic & Gulf Stevedores, Inc. v. OSHRC*, 534 F.2d 541, 547 (3d Cir. 1976) *Empire-Detroit Steel Division, Detroit Steel Corp. v. OSHRC*, 579 F.2d 378, 383 (6th Cir. 1978).

5. The Supreme Court in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–286, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974), stated:

> Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to

substitute its judgment for that of the agency." The agency must articulate between a "rational connection between the facts found and the choice made" ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given, ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. [Citation deleted.]

6. Even if the substantial evidence standard were applicable to the rejection of petitioner's *Anning-Johnson/Grossman* defense, we would set aside the decision of the ALJ because the record does not contain sufficient relevant evidence to satisfy the well-established reasonableness test for review under the substantial evidence standard. *See Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

bother to contact Emerick's home office" in Portland, Oregon. The ALJ added that "the tone of the testimony indicated it would be poor business practice to do much more" than complain to McKuen in view of the possible impact on future contracts. But the testimony of Smith's foreman at the site, William Zintek, does not support the ALJ's analysis. It was not so clear to him that continuing to discuss the matter with McKuen was, as the Secretary asserts, "utterly fruitless,"[7] and Zintek's testimony regarding the reason for not contacting McKuen's home office contains no suggestion that he subordinated safety to business considerations.

Smith's efforts were not limited to the registering of complaints. Zintek directed his men to remain on the first floor, away from the hazardous areas, as much as possible. As a result, he estimated that less than two per cent of Smith's man-hours of work during the violation period involved work on the second floor. Zintek instructed his men that "if you have to go to the second floor, use the southeast stairway and stay next to the wall, so if you trip, there is something to brace yourself against, the block wall." Smith employees were told to avoid the northeast stairway completely because it afforded less protection.[8]

The ALJ inaccurately summarized these directives in stating that "about all that Smith did here was tell its employees to be careful." Although the ALJ made no finding that Smith's instructions to its employees were not a "practical" means of protection, *Grossman Steel, supra,* the ALJ found Zintek's efforts wanting because he failed to tell his workers to use a ladder to the second floor rather than the stairways. The ALJ concluded that Smith failed to prove at the hearing its contention that the

ladder, which was temporarily in use at the outset of the project, was more hazardous than the stairs, in spite of the uncontradicted testimony to that effect from two witnesses, including Zintek.

Smith also provided a physical alternative means of protection at the location where its employees were most vulnerable. Because Emerick was less than prompt in attending to its complaints, Smith installed a plywood board at the elevator opening in the vicinity of which its employees spent most of their time. The ALJ did not comment on the effectiveness of this effort, but again found fault with Smith because it, lacking any carpenters on its payroll who were qualified and permitted by union work rules to erect the necessary railings, failed to request another subcontractor which had carpenters on its payroll to do the work. But Smith's foreman Zintek testified that he did not know that the other firm, Idaho Acoustical, had carpenters on the job, and the foreman for Idaho Acoustical testified that unilaterally erecting the railings was an unrealistic alternative because his men would have been "run off the job" if they had done so.

## V. LEGAL POLICY AND ANALYSIS

The ALJ did make reference to the "*Anning-Johnson* defense" but omitted any reference to the guidelines set forth in *Grossman Steel.* He made no finding that the actions taken by Smith were not "realistic" or "reasonable" alternatives, as he framed the issue in terms of whether the subcontractor took "appropriate" alternative measures. The ALJ stated that:

> All of the efforts taken by Smith to limit the access of its employees to the hazards will be considered in determining good

---

**7.** During cross-examination, Zintek was questioned as to why he continued to rely on discussions with McKuen in the face of his inaction:

Q. He wasn't ever "getting to it tomorrow" was he, sir?

A. No, he wasn't. But if you take anybody's word, he says, "All right, I'm going to do it tomorrow," well you just—

Q. (Interrupting) But he had been saying this since at least September 5, had he not,

right through to October 11? That is what your testimony is.

A. That's right.

**8.** Smith personnel did not have heavy or bulky items to carry up the stairs during the violation period. Smith had no employees working at or near the cited core area. Its work was confined to the panel room, some 20 to 25 feet away.

faith when assessing the penalty. But such efforts are not a complete defense to the violation.

But this approach ignores the fact that limiting the access of its own employees to the hazards is necessarily the very objective of the *Anning-Johnson/Grossman* rule. It also inappropriately deemphasizes the importance of good faith in assessing the reasonableness of a subcontractor's efforts. A noncreating and noncontrolling subcontractor which makes a bona fide and sincere effort to take the steps it believes necessary to protect its employees should not be penalized so long as it has not "close[d] its eyes" to the hazards or the available effective alternatives. *Grossman Steel, supra*, at 24,791. As this court has observed,

> Fundamental fairness would require that one charged with and penalized for violation be shown to have caused, *or at least to have knowingly acquiesced in,* that violation. Under our legal system, to date at least, no man is held accountable, or subject to fine, for the totally independent act of another.

*Brennan v. OSHRC, supra,* 511 F.2d at 1145 (emphasis added). Furthermore, the ALJ's approach tends improperly to diminish the significance of the question of liability as compared with the amount of the fine to be assessed. Keeping its record clear may be particularly important to small firms like the petitioner, which has 75 employees and no previous violations in its more than 25-year history.

The ALJ's analysis of the record also is inconsistent with the pragmatic emphasis of the *Anning-Johnson* and *Grossman Steel* decisions and of the earlier Seventh Circuit decision in *Anning-Johnson Co. v. OSHRC,* 516 F.2d 1081 (7th Cir. 1975). In the latter case, petitioner subcontractor challenged the Commission rule at that time that noncreating and noncontrolling subcontractors were strictly liable for even nonserious violative conditions to which their employees were exposed. The Seventh Circuit reversed, stating that the OSHA contemplated enforcement only where "realistic," and that this requires that the Secretary's inter-

est in enforcement be balanced against the interests of equity, economy and efficiency. *Id.* at 1088–89. The court referred to the comment of Senator Williams in the legislative history of the Act that Congress had made a "good faith effort to balance the need of workers to have a sale [sic] and healthy work environment against the requirement of industry to function without undue interference." The court noted that the congressional reason for placing on the employer primary responsibility for occupational safety standards does not exist in the case of many subcontractors, since they do not have primary control over the work environment. *Id.* at 1088. The court also rejected the Commission's theory that the more people responsible for correcting any violation, the more likely that it will get done:

> Placing responsibility in more than one place is at least likely to cause confusion and disruption in normal working relationships on a construction site. Such a policy might in effect prove to be counterproductive.

*Id.* at 1089.

The Commission in *Grossman Steel* took a similar approach. It noted that its new policy, prompted by the Seventh Circuit's decision in *Anning-Johnson* and other cases, was to hold an employer responsible for any hazards it creates, regardless of whether its employees are exposed to the hazards, and to hold the general contractor additionally responsible for any violations it could reasonably have been expected to prevent or abate by reason of its supervisory capacity. 1975–76 CCH OSHD at 24,791. It recognized that, given this assignment of liability, "it does not further serve the purpose of the Act to impose liability on a subcontractor who could not realistically be expected to . . . abate [a violation] once it is discovered, even though his own employees may be exposed," since the employees of the subcontractor have already received the protection intended by the Act.

Whenever a violation is found at a multiemployer construction site, it is normally not difficult to assert that the subcontrac-

**1274**

tor could conceivably have done something more to protect their exposed employees. We believe that the ALJ should have looked at the totality of Smith's conduct, rather than parsing each act separately. We agree with Petitioner that the proper analysis is to determine whether a reasonable employer would have done more than it did to protect its own employees, not whether more could have been done by Smith to make the site safer for all employees working there.

## VI. CONCLUSION

For the foregoing reasons we grant the petition for review, reverse the decision of the Commission and direct that the citations issued to Petitioner be vacated.

PETITION GRANTED, DECISION RE-VERSED.