**TURNER COMPANY, DIVISION OF
OLIN CORPORATION,
Petitioner-Appellant,**

v.

**SECRETARY OF LABOR and OSHRC,
Respondents-Appellees.**

No. 76–2025.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1977.
Decided Aug. 31, 1977.

William V. Hollander, New Haven, Conn., William B. Dickinson, Stamford, Conn., for petitioner-appellant.

Michael H. Levin, Joan M. Hollenbach, U. S. Dept. of Labor, Washington, D.C., for respondents-appellees.

Before CUMMINGS, and PELL, Circuit Judges, and MARSHALL, District Judge.*

CUMMINGS, Circuit Judge.

Petitioner Turner presently appeals from the final decision of the Occupational Safety and Health Review Commission entered on August 24, 1976, in OSHRC Docket No. 3635. Therein the Commission, *inter alia*, affirmed a $75 penalty imposed by the Secretary of Labor on account of Turner's alleged failure to comply with federal occupational safety and health noise standards, as required by the Occupational Safety and Health Act of 1970 (29 U.S.C. § 654). More importantly, the Commission's decision would require Turner to adopt an engineering noise abatement program at an estimated cost of up to $30,000 to bring Turner into compliance. Our jurisdiction is conferred by virtue of 29 U.S.C. § 660(a).

The controversy at hand presents an issue of first impression for this Circuit[1] and requires us to interpret the relevant language of the occupational noise exposure standard[2] promulgated by the Secretary of Labor pursuant to the Occupational Safety and Health Act (29 U.S.C. § 655).

What is of particular concern here is whether the Commission should construe the word "feasible" in the standard, as suggested by Turner, to include a consideration of both technical and economic feasibility, in order to weigh rationally the costs of implementation and maintenance of any proposed noise abatement program with the benefits to be received, or as suggested by the Secretary of Labor, to limit its consideration to the financial ability of an employer to pay for technological controls irrespective of compelling alternatives.

Upon consideration of the record, the briefs of the parties, including an *amicus curiae* brief on behalf of Continental Can Company, and for the reasons more fully set forth below, we hold that the word "feasible" as contained in 29 CFR § 1910.-95(b)(1) (note 2 *supra*) must be given its ordinary and common sense meaning of "practicable." This construction is in accord with the clear intent of Congress and the purpose of the Occupational Safety and Health Act. Accordingly, the Commission erred when it failed to consider the relative cost of implementing engineering controls in Turner's Waterbury room in its Sycamore, Illinois, plant versus the effectiveness

---

* Judge Prentice H. Marshall of the United States District Court for the Northern District of Illinois is sitting by designation.

1. But see *International Union v. United States Occupational Safety and Health Review Commission*, 557 F.2d 607 (7th Cir. decided June 24, 1977) (*per curiam*).

2. That standard provides (29 CFR § 1910.-95(b)(1)):
   "When employees are subjected to sound exceeding those listed in Table G–16, *feasible administrative or engineering controls shall be utilized.* If such controls fail to reduce sound levels within the levels of Table G–16,

personal protective equipment shall be provided and used to reduce sound levels within the levels of the table. (Emphasis supplied.)

Table G -16—Permissible Noise Exposure

| Duration per day, hours | Sound Level dBA slow response |
|---|---|
| 8 | 90 |
| 6 | 92 |
| 4 | 95 |
| 3 | 97 |
| 2 | 100 |
| 1½ | 102 |
| 1 | 105 |
| ½ | 110 |
| ¼ or less | 115 |

of an existing personal protective equipment program utilizing individually fitted earplugs. We, therefore, set aside the decision of the Commission and remand the case for further proceedings not inconsistent with this order.

■ In accord with this Court's longstanding policy of requiring strict necessity before disposing of constitutional issues, we decline under the circumstances to address Turner's due process challenge to 29 CFR § 1910.95(b)(1) (note 2 *supra*). This is particularly warranted where, as here, the Commission on remand must consider those factors which in our view obviate any due process challenge. See *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–348, 56 S.Ct. 466, 80 L.Ed. 688 (concurring opinion of Justice Brandeis).

## I

The relevant facts are not in dispute and may be summarized as follows:

On May 18, 1973, during a routine inspection of Turner's manufacturing plant in Sycamore, Illinois, an Occupational Safety and Health Administration compliance officer determined that the ambient noise level of the so-called "Waterbury" room exceeded the permissible standard for occupational noise exposure as established by the Secretary of Labor. See 29 CFR § 1910.95(b)(1) (note 2 *supra*).

The Waterbury room is located in the southwestern quadrant of the plant and houses three power presses: a Bliss power press; a Niagara Automatic power press; and a Waterbury-Farrell Automatic transfer power press. The presses are used in the manufacture of small steel gas cylinders. The Bliss press forms foot rings which are attached to the bottom of finished cylinders. The dies of the Niagara press make about 27 up-and-down strokes per minute, and each stroke forms three "cups", so that about 81 "cups" are produced from sheet steel every minute. In turn, the Waterbury press fabricates the "cups" into the tops and bottoms of propane cylinders at a rate of 33 to 38 cans per minute.

Nine employees, out of approximately 350 employed by Turner, work in the Waterbury room in three eight-hour shifts. The ambient noise levels during this period have been stipulated to by the parties as follows:

(a) *Bliss Press Area:*
480 minutes at 100 dBA.

(b) *Waterbury Press Area:*
12 minutes at an average of 90 dBA, 61 minutes at an average of 92 dBA, and 407 minutes at an average of 96 dBA.

(c) *Niagara Press Area:*
12 minutes at less than 90 dBA, 61 minutes at an average of 90 dBA, and 407 minutes at an average of 95 dBA.

These levels are admittedly in excess of the Secretary's noise standard (note 2 *supra*). However, the record establishes that Turner has maintained an effective hearing conservation program whereby press operators in the Waterbury room are required to wear ear protectors which are capable of reducing the noise level in the employee's inner ear down to at least 80 decibels. Furthermore, the press operators have been instructed on the need for ear protectors while on duty, and signs in the plant remind them of this requirement. Turner has furnished various types of ear protection, custom-fitted by its nurse. The evidence establishes that the press operators have not suffered any loss of hearing nor have otherwise complained of any hearing difficulties.

Notwithstanding, a citation was served upon Turner on June 14, 1973, which, *inter alia*, described the noise exposure violation as "non-serious" but nonetheless ordered "[a]n abatement plan to be submitted on or before July 16, 1973," and also ordered "[f]ull compliance shall be obtained on or before June, 1974." In addition, a $75 fine was imposed.

After petitioner filed a notice of contest with the Area Director challenging the noise exposure violation, the Secretary filed a complaint with the Commission pursuant to 29 U.S.C. § 659(c). Thereafter on February 18, 1975, an Administrative Law Judge

affirmed the Secretary's citation of non-compliance on the basis of the record, but without weighing the cost-benefit considerations which we deem essential to a rational interpretation of 29 CFR § 1910.95(b)(1) (note 2 *supra*). The subsequent affirmation by the Commission in a two-to-one decision on review fails in the same regard and erroneously rejects out of hand Turner's furnishing of personal protective equipment, once it has been shown that technological feasibility exists and that the cost of such an abatement program is (in the balance sheet sense) affordable by an employer such as Turner.

## II

The Commission's majority decision in *Turner* represents a position antagonistic and in direct conflict to that taken in the companion case of *Secretary of Labor v. Continental Can*, 4 OSHC 1541, decided the same day. The reason for this inconsistency cannot be supported by the Commission's subsequent decisions or the particular facts of *Turner*.

In *Continental Can* the Commission addressed the issue of economic feasibility squarely and stated the issue as follows:

"The basic controversy between the parties concerns whether the word 'feasible' as used in the standard should be interpreted to mean only 'technically possible,' as Labor contends, or whether it includes a component of economic feasibility, as claimed by Continental.

"The record establishes that the technology exists to achieve a significant reduction of the noise in Continental's plants. Labor contends that this is sufficient to establish a violation of the standard, and that our inquiry need go no further. Continental contends, however, that in determining whether controls are feasible, the costs of such controls must be considered and weighed against the benefits which will be produced. Either interpretation is arguably within the literal meaning of 'feasible,' and the standard itself does not further define the term. Nor does the history and background of the standard provide any insight into its meaning. The standard must therefore be interpreted to effectuate the Congressional purposes underlying the Act." (Citations omitted; footnote deleted) 4 OSHC at 1546.

Furthermore, the Commission noted that "[a]lthough Congress intended that standards be economically feasible, the history of this standard reveals that no attention to this factor was necessarily paid in its promulgation. The standard was first promulgated pursuant to the Walsh-Healey Act, which contained no requirement that economic feasibility be considered. It was then, under this Act, made applicable to all employers throughout the country pursuant to procedures which precluded further consideration of its economic feasibility * *. Thus, were we to hold that economic feasibility is irrelevant in enforcing the standard, the consequence would be that the standard would be applied without any consideration ever having been given to its economic consequences, either on a national basis or on an industry-by-industry basis * * *." 4 OSHC at 1547.

█ It was, therefore, after thorough consideration of the relative legislative history that the Commission formulated the standard which we presently adopt:

"* * * we conclude that the standard should be interpreted to require those engineering and administrative controls which are economically as well as technically feasible. Controls may be economically feasible even though they are expensive and increase production costs. See *Arkansas-Best Freight Systems, Inc.*, 529 F.2d 649, 653 [3 OSHC 1910] (8th Cir. Jan. 29, 1976); *Industrial Union Department, AFL-CIO v. Hodgson, supra*, [162 U.S.App.D.C. 331,] 499 F.2d [467] at 477. But they will not be required without regard to the costs which must be incurred and the benefits they will achieve. In determining whether controls are economically feasible, all the relevant cost and benefit factors must be weighed." *(Idem.)*

The standard adopted in *Continental Can* has been utilized by the Commission in both *Secretary of Labor v. Castle & Cooke Foods, Inc.* (5 OSHC 1435, decided May 19, 1977), and in *Secretary of Labor v. Great Falls Tribune Company* (5 OSHC 1443, decided the same day). We agree with the Commission's observation in *Castle* that "[e]xcessive noise * * * is only one of numerous safety and health hazards the Act seeks to eliminate from workplaces, and other hazards pose serious debilitating threats, and yet others are life threatening" (5 OSHC at 1438).

In this perspective, the Commission must realistically consider the hazards presented by the excessive noise in Turner's Waterbury room and determine whether the health benefits to employees who are already equipped with personal protection equipment justify the $30,000 cost to Turner for engineering controls.

The Commission's order is set aside and this matter is remanded for further proceedings consistent herewith.