**DIVERSIFIED INDUSTRIES DIVISION, INDEPENDENT STAVE COMPANY and Independent Stave Company, Petitioners,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

**Ray Marshall, Secretary of Labor, Co-Respondent.**

**No. 79–1291.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 3, 1979.

Decided March 26, 1980.

Donald J. Jones, Springfield, Mo., for appellant.

Domenique Kirchner, Atty., U. S. Dept. of Labor, Washington, D. C., argued, Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel, for Appellate Litigation, Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Diversified Industries Division, Independent Stave Company (Diversified) and Independent Stave Company (Independent) petition for review of an order of the Occupational Safety and Health Review Commission (the Commission). After a contested hearing the administrative law judge [1] found Diversified and Independent to be in violation of safety standards concerning

---

1. Alan M. Wienman, administrative law judge, wrote an extensive opinion summarizing the testimony, making findings on the disputed issues of fact, and stating his conclusions and reasons for reaching them.

noise,[2] hazardous materials,[3] spray booths,[4] nuisance dust,[5] personal protective equipment,[6] and machine guarding.[7] The Secretary of Labor (the Secretary) had promulgated these safety standards pursuant to authority granted by the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 651 *et seq.* The administrative law judge then ordered Diversified to install engineering controls to bring noise levels at its factory within permissible levels.

On appeal, Diversified argues chiefly that the Secretary failed to carry his burden of proving the engineering controls to be technologically and economically "feasible" within the meaning of the applicable regulation. Both Diversified and Independent also contend that substantial evidence fails to support the administrative law judge's affirmance of citations issued by the Secretary against them. We disagree with these contentions. Accordingly, we affirm the Commission's order.

I. *Background.*

Diversified is a division of Independent and employs sixty workers in the manufacture of wooden bowls and other products at its Lebanon, Missouri, worksite. Independent employs about two hundred workers in the manufacture of wooden barrels at its Lebanon factory. The Secretary's compliance officers inspected Diversified's bowl factory from January 11 through 19, 1977, and Independent's barrel factory on January 25, 1977. Following the inspections, the compliance officers cited Diversified and Independent for numerous nonserious and serious violations of 29 U.S.C. § 654(a)(2) (1976).[8]

In the manufacture of wooden products Diversified employees use two straight blade planers.[9] Employees alternate between two work stations while using each planer; one employee feeds wood boards into the planer as another removes the boards from the planer and loads them on a pallet truck. The planers' blades emit continuous noise as they strike against the wood. Compliance officers measured the noise at levels up to 120 decibels (dBA) over the eight hours of exposure that occur during the normal workshift. This combination of noise level and exposure per day exceeds that permitted by Table G–16 of 29 C.F.R. § 1910.95(b) (1978).[10]

---

2. 29 C.F.R. § 1910.95(b) (1978), quoted *infra* note 10.

3. 29 C.F.R. § 1910.106(e)(2)(ii)(b)(2) (1978).

4. 29 C.F.R. § 1910.107(b)(1), (b)(5)(i), (g)(2) (1978).

5. 29 C.F.R. § 1910.1000(c), (e) (1978).

6. 29 C.F.R. § 1910.95(a) (1978); 29 C.F.R. § 1910.132(a) (1978).

7. 29 C.F.R. § 1910.212(a)(1), (a)(3)(ii) (1978); 29 C.F.R. § 1910.213(g)(1) (1978); 29 C.F.R. § 1910.214(*o*) (1978), *revoked*, 43 Fed.Reg. 49726, 49754 (1978); 29 C.F.R. § 1910.215(a)(2) (1978); 29 C.F.R. § 1910.219(c)(4)(i),· (e)(1)(i), (f)(1), (f)(3) (1978).

8. 29 U.S.C. § 654(a)(2) provides:

(a) Each employer—

\* \* \* \* \* \*

(2) shall comply with occupational safety and health standards promulgated under this chapter.

All violations of duly promulgated standards, except those which have a substantial probability of resulting in death or serious physical harm, are nonserious. *See* 29 U.S.C. § 666(c), (j) (1976). To prove a serious violation of Secretary must make a prima facie case that the employer either knew, or through the exercise of reasonable diligence could have known, of the violation. *See id.; Brennan v. OSHRC (Hendrix d/b/a Alsea Lumber Company)*, 511 F.2d 1139, 1142 (9th Cir. 1975).

9. One is a Buss straight blade planer, the other a Greenlee straight blade planer.

10. 29 C.F.R. § 1910.95(b) (1978) provides:

(b)(1) When employees are subjected to sound [levels] exceeding those listed in Table G–16, feasible administrative or engineering *controls shall be utilized. If such controls* fail to reduce sound levels within the levels of Table G–16, personal protective equipment shall be provided and used to reduce sound levels within the levels of the table.

(2) If the variations in noise level involve maxima at intervals of 1 second or less, it is to be considered continuous.

(3) In all cases where the sound levels exceed the values shown herein, a continuing,

Recognizing that such high noise levels pose dangers to its employees, Diversified has implemented a safety program that requires planer operators to wear industrial earmuffs as "personal protective equipment." Diversified concedes, however, that because of the regulation's preference for administrative or engineering controls over personal protective equipment to reduce noise levels,[11] it must install such controls if feasible to reduce noise levels.

Both Diversified and Independent contested the Secretary's citations. After a hearing in December 1977 and January 1978 the parties reached a partial settlement with the approval of the administrative law judge. In his decision the administrative law judge affirmed most of the citations but vacated others for failure of proof or inapplicability of the standard under which the Secretary issued the citation. In affirming the Secretary's citation for a non-serious violation of 29 C.F.R. § 1910.95(b) (1978), the administrative law judge ordered Diversified to install engineering controls to reduce noise levels around the planer. Because the Commission declined discretionary review, the administrative law judge's decision became the Commission's final order. See 29 U.S.C. § 661(i) (1976).

To affirm a citation requiring the installation of engineering controls under 29 C.F.R. § 1910.95(b) (1978), the administrative law judge must find that the Secretary proved such controls to be technologically and economically feasible. RMI Co. v. Secretary of Labor, 594 F.2d 566 (6th Cir. 1979); Turner Co. v. Secretary of Labor, 561 F.2d 82 (7th Cir. 1977).[12] See generally Annot., 43 ALR Fed. 159 (1979). Diversified contends that the administrative law judge erred in finding that the Secretary carried this burden. We now turn to that contention.

II. *Feasibility.*

The Act provides that an aggrieved party may obtain judicial review of a Commission order in the appropriate United States Court of Appeals. See 29 U.S.C. § 660(a) (1976). The Act imposes limits on judicial review of such cases, directing courts to treat the Commission's factual findings as conclusive if supported by substantial evidence on the record considered as a whole. *Id.* Here the administrative law judge found that Diversified's planers subjected their operators to noise in excess of the permissible levels. Substantial evidence supports this finding, and we consider ourselves bound by it.[13]

---

effective hearing conservation program shall be administered.

TABLE G–16—PERMISSIBLE NOISE EXPOSURES

| Duration per day, hours | Sound level dBA slow response |
| --- | --- |
| 8 | 90 |
| * * * | |

[Footnote omitted.]

11. One court, while deferring to this regulatory preference, strongly questioned its wisdom as applied to the facts of the case before it. *RMI Co. v. Secretary of Labor,* 594 F.2d 566, 571 & n. 15 (6th Cir. 1979). In *RMI,* the Secretary's proposed controls could not reduce overall noise to permissible levels; employees would therefore still be required to wear earmuffs for at least part of the day. Here the Secretary contends that engineering controls will by themselves reduce noise to permissible levels.

12. *See also AFL–CIO v. Marshall,* 199 U.S. App.D.C. ——, ——–——, 617 F.2d 636, 659–666 (D.C. Cir. Oct. 24, 1979) (although the

Secretary must consider economic feasibility in promulgating health regulations, formal cost-benefit analysis is not required). As the court noted in *RMI Co. v. Secretary of Labor, supra,* 594 F.2d at 571 n. 17, the Supreme Court's review of *American Petroleum Institute v. OSHA,* 581 F.2d 493 (5th Cir. 1978), cert. granted sub nom. *Industrial Union Dept., AFL–CIO v. American Petroleum Institute,* 440 U.S. 906 (1979) may determine the propriety and parameters of cost-benefit analysis under the Act's regulatory scheme.

In the present case, the administrative law judge has weighed economic factors in determining the feasibility of engineering controls. *See* text *infra.* Diversified does not argue that the lack of a formal cost-benefit analysis undermines the Commission's order.

13. The Secretary established the noise levels primarily by readings from an audio dosimeter. Diversified contends that the Secretary cannot rely on such readings to provide evidence of noise violations under 29 C.F.R. § 1910.95(b) (1978). This contention is without merit.

The administrative law judge further found that the Secretary proved the existence of technologically and economically feasible engineering controls to reduce noise levels around Diversified's planers. We also review this finding under the substantial evidence test.[14]

To support Diversified's noise citation the Secretary introduced expert-witness testimony by Mary Murphy, an industrial hygienist with the Occupational Safety and Health Administration's regional office in Kansas City, Missouri. She testified that although she had not observed Diversified's planers, she had seen a Whitney straight blade planer enclosed with plywood and celotex at a Kansas City, Kansas, company. She said that the enclosure reduced noise levels on that company's Whitney planer from 105 to 90 decibels. She further referred to technical literature documenting the efficacy of acoustical enclosures in reducing noise levels of machines in the sawmill industry, and a letter received from the North Carolina Department of Labor detailing reduction of planer noise levels through engineering controls. Ms. Murphy also testified that as an alternative to acoustical enclosures, Diversified could employ helical blades to reduce the planers' noise levels. She stated that enclosures for a "36 inch planer" would cost no more than $4,000, even if such an enclosure were made of steel, and that helical blades cost $100 per inch.

To rebut this evidence Diversified relied on the testimony of three employees and the manager of a firm specializing in the distribution of acoustical products. The testimony of the three employees may be summarized as follows: Diversified had investigated the use of acoustical enclosures to reduce the planers' noise, but had been told that such enclosures would not necessarily reduce noise; acoustical enclosures generally interfere with production and may create a fire hazard; when Diversified previously enclosed one of its planers with particle board, the enclosure interfered with production and was otherwise unsatisfactory; when Diversified previously equipped a planer with helical blades, it found the blades too expensive to maintain. James Dale, the manager of an acoustical products distributor in Springfield, Missouri, testified that he had examined Independent's planers and concluded that acoustical enclosures made of plywood would be impractical. He testified that although an enclosure constructed from a steel-fabricated product might effectively reduce noise, he did not know how to design one.

Weighing this evidence, Administrative Law Judge Wienman found that "engineering controls are available which will implement a substantial reduction in noise levels" and that the "cost of controls appears relatively modest in terms of the benefits." Judge Weinman further observed that "[n]o witness has testified that woodworking plants have noise problems which cannot be solved by modern engineering techniques."

We note at the outset that neither party introduced evidence of such a quality as would clearly establish or refute the feasibility of engineering controls to reduce noise levels around Diversified's planers. The Secretary's expert on this issue had not observed Diversified's planers. Diversified's rebuttal evidence consisted of its employees relating personal experiences in dealing with noise problems, and the testimony of James Dale, who candidly confessed to limited expertise in the field of noise

14. *See, e. g., Marshall v. West Point Pepperell, Inc.*, 588 F.2d 979, 984 (5th Cir. 1979) (substantial evidence test applied to review Commission finding that engineering controls to reduce noise levels were technologically infeasible); M. Rothstein, Occupational Safety and Health Law § 486 (1978).

In *RMI Co. v. Secretary of Labor, supra*, 594 F.2d at 569–70, the Commission had determined that engineering controls to reduce noise levels were feasible even though such controls would not reduce noise to permissible levels. *See* note 11 *supra*. The court reviewed the Commission's determination under the Administrative Procedure Act's "arbitrary and capricious" standard. 5 U.S.C. § 706(2)(A) (1976). Because the issue was one of policy or interpretation argued on uncontested facts, the court properly employed the narrower scope of review to test the Commission's conclusion. *See generally* M. Rothstein, Occupational Safety and Health Law §§ 485, 489.

abatement. Neither side produced an acoustical engineer or other expert with precise qualifications or experience relating precisely to noise abatement.

Nonetheless, we believe that substantial evidence on the record considered as a whole supports the administrative law judge's feasibility determination. Although witness Murphy had not observed Diversified's planers, she testified that she was familiar with woodworking machines generally and with technical literature concerning the abatement of their noise. She had seen engineering controls successfully implemented on a machine similar to Diversified's planer. That experience sufficiently supports her opinion affirming the technological feasibility of engineering controls to reduce the noise around Diversified's planers. Diversified did not rebut her testimony relating to the cost of the proposed engineering controls, and it does not argue that the cost of the controls makes them infeasible. Thus, the administrative law judge was required to make a factfinding on this issue based upon all the evidence. On our review of the record, we conclude that the administrative law judge's feasibility determination is supported by substantial evidence.

We therefore affirm the Commission's order that engineering controls be installed in Diversified's plant. We note that, should Diversified discover after a good faith effort to comply with the order that engineering controls are in fact infeasible, it may return to the Secretary for a modification of the order. *See* 29 U.S.C. § 659(c) (1976).

III. *Other Citations.*

Diversified and Independent contend that substantial evidence on the record considered as a whole fails to support the administrative law judge's affirmance of other citations, and that the administrative law judge erroneously applied certain regulations to affirm some of those citations. We have carefully reviewed the record and the regulations in issue and find these contentions to be without merit.

Accordingly, we affirm the Commission's order in full.